# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| LOLA ANN BRANNUM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CV01060 ERW |
| ) | |
| MISSOURI DEPARTMENT OF ) | |
| CORRECTIONS, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court upon Defendant's Motion for Summary Judgment [doc. #29].

## I. BACKGROUND FACTS[1]

Plaintiff Lola Ann Brannum ("Plaintiff") is currently employed by Defendant Missouri Department of Corrections ("Defendant" or "MDOC") as a Correctional Officer I ("CO-1") at the Potosi Correctional Center.

On June 23, 2003, while Plaintiff was working in the special needs unit ("SNU")[2], Ms. Sharon Gifford ("Ms. Gifford"),the functional unit manager, entered the unit's control room and asked Correctional Officer William Bjork ("Officer Bjork") whether he enjoyed working in the

---

[1] The Court's recitation of the facts is taken from Defendant's Statement of Uncontroverted Material Facts and Plaintiff's Objections and Responses to Defendant's Statement of Uncontroverted Facts. The Court has noted any disputes as they are set forth in the briefs.

[2] The special needs unit houses inmates who are developmentally disabled or who have mental illness.

1

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

SNU. According to Plaintiff, Officer Bjork responded that he intended to "bid out of the [SNU]" because his experience working there was not what he expected. Plaintiff claims that Ms. Gifford informed Officer Bjork that he would not be permitted to work in the unit without receiving SNU training. Upon hearing this statement, Plaintiff said she had worked in the SNU for over a year, but had not received any training. Plaintiff claims that Ms. Gifford replied that Plaintiff did not need training and that women tended to do a better job in the SNU because they are more patient and nurturing than men.[3] Subsequently, Officer Bjork filed a memorandum with Captain Garry Branch about the incident, stating that Ms. Gifford's comments were unprofessional and amounted to sexual harassment. Plaintiff signed the memorandum and indicated that she was a witness to the conversation. On June 27, 2003, Officer Bjork filed an employee grievance, claiming that he was sexually harassed by Ms. Gifford.

On July 1, 2003, Plaintiff worked the third shift in the SNU. Plaintiff claims that an inmate became "upset" with her. Plaintiff asked the other correctional officers who worked in the unit to talk to the inmate and calm him down. According to Plaintiff, words were exchanged and the correctional officers escorted the inmate to his cell using the "soft empty hand" (touching for escort) method.[4] The inmate recalls the incident differently. According to the inmate, the correctional officers grabbed him, forced him into his cell and slammed the cell door on his leg. The inmate filed a complaint with Sergeant Kelly Brownlee.

On August 18, 2003, Mike O'Brien (Investigator O'Brien"), an investigator from South

---

[3] Ms. Gifford recalls this conversation differently. Defendant claims that she stated that sometimes women get along better because offenders see them as more nurturing.

[4] The correctional officers who allegedly escorted the inmate to his cell were Officers John Barker, Reuben Cook and Rodney Beers.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Central Correctional Center, filed an investigative report concluding that an unreported use of force involving the inmate did occur on July 1, 2003. Investigator O'Brien also determined that Plaintiff discussed the case, while it was under investigation, with persons inside and outside of the department and solicited assistance from a former inmate.

On December 2, 2003, George Lombardi, the director of the Division of Adult Institutions issued Plaintiff a letter of reprimand for: 1) failing to summons a supervisor; 2) failing to report the use of force; 3) collaborating to mislead the investigation of the use of force; 4) soliciting and submitting false testimony; 5) providing false responses to investigators; and 6) participating in unauthorized discussions about a confidential grievance that was under review. Plaintiff was transferred from the SNU and worked as a temporary utility officer until 2004 or 2005, when she worked the day shift.

In October 2003, Plaintiff filed an administrative charge of discrimination with both the EEOC and the Missouri Commission on Human Rights. Plaintiff was given a Right to Sue Notice, dated June 15, 2005. Plaintiff filed her Complaint on July 2, 2005, against Defendant Missouri Department of Corrections and amended it on July 20, 2005. Plaintiff alleges unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) *et seq*. Specifically, Plaintiff claims that Defendant retaliated against her because she indicated she was a witness to Ms. Gifford's alleged sexual harassment of Officer Bjork. Plaintiff alleges that Defendant retaliated by initiating the "use of force" investigation, issuing a letter of reprimand, and transferring Plaintiff from her position in the SNU to temporary utility officer. Defendant moves for summary judgment on Plaintiff's Complaint, claiming that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law.

3

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

If the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. "Thus, where the moving party can point to the absence of any evidence satisfying a necessary element of a claim, such as damages, and the non-moving party fails to produce any such evidence, summary judgment is properly entered." *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1018 (8th Cir. 2004).

4

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does, in fact, bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

## III.   DISCUSSION

For summary judgment, Defendant argues that Plaintiff cannot establish a *prima facie* case on her retaliation claim. Defendant therefore contends that it is entitled to judgment as a matter of law.

Under Title VII of the Civil Rights Act of 1964, 78 Stat. 255, as amended, 42 U.S.C. § 2000e-3(a), it is unlawful "for an employer to discriminate against any of his employees ...

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

because [the employee] has opposed any practice made an unlawful employment practice by [Title VII] or because [the employee] has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." To establish a prima facie case of retaliatory discrimination under Title VII, Plaintiff must show that (1) she engaged in statutorily protected activity; (2) an adverse employment action was taken against her; and (3) a causal connection exists between the two events. *Gagnon v. Sprint Corp.*, 284 F.3d 839, 849-50 (8th Cir. 2002); *Wiehoff v. GTE Directories Corp.*, 61 F.3d 588 (8th Cir. 1995) (considering retaliation under the Age Discrimination in Employment Act) (citing *Wentz v. Maryland Casualty Co.*, 869 F.2d 1153, 1154-55 (8th Cir. 1989)).

The parties agree that the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) applies to Plaintiff's claim of retaliation   Under this three-step analytical framework, a plaintiff has the initial burden of establishing a prima face case of discrimination. *Gagnon,* 284 F.3d at 847; *Hill v. St. Louis University*, 123 F.3d 1114, 1119 (8th Cir. 1997). If a plaintiff is successful in establishing a prima facie case, a rebuttable presumption of discrimination arises. *Gagnon*, 284 F.3d at 847. The burden then shifts to the defendant, who must articulate a legitimate, non-discriminatory reason for the adverse employment decision. *Id.* Once the employer articulates such a reason, the plaintiff bears the burden of proving that the employer's proffered reason is merely a pretext for discriminatory animus. *Id*.

The first element of a retaliation claim requires that a plaintiff engage in "protected activity." The Eighth Circuit has made clear that "plaintiffs who reasonably believe that conduct violates Title VII should be protected from retaliation even if a court ultimately concludes that a plaintiff was mistaken in her belief." *Logan v. Liberty Healthcare Corp*., 416 F.3d 877, 881 n.3

6

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(8th Cir. 2005). The parties dispute whether Plaintiff could have reasonably believed that Ms. Gifford's statement to Officer Bjork violated Title VII and, therefore, whether Plaintiff's participation in the complaint filed against Ms. Gifford constitutes protected activity.

In *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268 (2001), the Supreme Court considered whether a single incident of lewd joking between a supervisor and employee was reasonably viewed as sexual harassment in violation of Title VII, so as to support another employee's claim that she was retaliated against for her alleged protected activity in complaining about the incident. The Ninth Circuit held that the employee could have reasonably believed that the supervisor and employee's conduct was unlawful under Title VII. The Court reversed the Ninth Circuit's holding and determined that "no reasonable person could have believed that the single incident recounted above violated Title VII's standards." *Id*. at 270. The Court explained that the alleged conduct was, at worst, an 'isolated incident' that cannot be remotely considered extremely serious." *Id.* at 271.

> The Court reiterated the framework under which sexual harassment is actionable:
>
> Sexual harassment is actionable under Title VII only if it is so severe or pervasive as to alter the conditions of the victim's employment and create an abusive work environment. Workplace conduct is not measured in isolation; instead, 'whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances,' including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Hence, a recurring point in our opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.

*Id*. at 270. (internal citations and quotations omitted).

Here, the Court finds that a reasonable person could not have objectively believed that Ms. Gifford's alleged comment, that women tended to do a better job in the SNU because they

7

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

are more patient and nurturing than men, violated Title VII. Under *Breeden*, Ms. Gifford's statement was a mere offhand comment that could not reasonably be found to be so severe or pervasive as to alter a term or condition of employment. *See Barker v. Mo. Dep't of Corr.*, No. 4:05 CV 1173, 2006 U.S. Dist. LEXIS 91934 , at *16 (E.D. Mo. December 19, 2006); *see also Meriwether v. Caraustar Packaging Co.*, 326 F.3d 990, 993 (8th Cir. 2003) (single act of physical touching on the buttocks accompanied by later joking remarks was not sufficiently severe or pervasive as to affect a term, condition or privilege of employment). Therefore, Plaintiff has failed to show that she engaged in statutorily protected activity and cannot establish a *prima facie* case of retaliation.

Even assuming Plaintiff could establish a *prima facie* case of retaliation, Defendant has articulated a legitimate, non-discriminatory reason for initiating the "use of force" investigation, for issuing Plaintiff a letter of reprimand and for transferring Plaintiff from her position in the SNU to temporary utility officer.

First, Defendant explained that it initiated the "use of force" investigation against Plaintiff, and the other officers involved in the incident, because an inmate complained to Sergeant Brownlee that he was physically abused by the officers. Second, Defendant stated that it issued Plaintiff a letter of reprimand for failure to comply with MDOC's policy. Investigator O'Brien found that force had been used against the inmate and that Plaintiff observed the incident, but failed to summons a supervisor and to report the use of force prior to completing her shift, as required under MDOC policy. In addition, Investigator O'Brien concluded that Plaintiff violated MDOC's policy by discussing an on-going investigation with others and soliciting assistance from a former inmate. Finally, Defendant claims that it transferred Plaintiff, and the other officers

8

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

involved in the incident, out of the SNU because they were accused of physically abusing an inmate.

The burden now shifts to Plaintiff, to prove that Defendant's proffered reasons are merely a pretext for discriminatory animus. To support her claim of pretext, Plaintiff contends that the "use of force" investigation was based on incomplete information, as evidence exonerating Plaintiff was purposely withheld. The relevant question is whether Defendant believed Plaintiff was guilty of the conduct justifying the investigation, not if Plaintiff actually did what she was accused of doing. *See Barker,* 2006 U.S. Dist. LEXIS 91934, at *9 (quoting *Scroggins v. Univ. of Minnesota*, 221 F.3d 1042, 1045 (8th Cir. 2000); *see also EEOC v. Trans States Airlines Inc.*, 462 F.3d 987, 992 (8th Cir. 2006) (same).

The Court finds that Plaintiff has failed to present sufficient evidence to support an inference of Defendant's unlawful motive. In his investigation report, Investigator O'Brien stated that he interviewed the inmate who complained of the alleged physical abuse and the officers involved in the allegation.[5] Based on the admissions made by staff and the existence of bruising on the inmate's body, Investigator O'Brien concluded that an unreported use of force involving the inmate occurred. *See* Def.'s Mot. for Summ. J. Ex. G. Plaintiff has not presented sufficient evidence to show that Investigator O Brien's conclusions had no basis in fact. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 834 (8th Cir. 2002) ("One method of proving pretext is to show that the employer's proffered explanation had no basis in fact."). Thus, the Court concludes that a reasonably jury could not find that Defendant's reason for initiating and conducting the "use of

---

[5] Investigator O'Brien noted that the officers offered conflicting statements as to what took place on the night of the incident in question. *See* Def's Mot. for Summ. J. Ex. G.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

force" investigation was pretextual.

Likewise, the Court is not persuaded that the letter of reprimand issued to Plaintiff at the conclusion of the investigation was motivated by discriminatory animus. Defendant determined, on the basis of Investigator O'Brien's report, that Plaintiff violated MDOC policy. *See Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc) (violating company policies is a legitimate reason for an [adverse employment action]); *see also Trans State Airlines, Inc.*, 462 F.3d at 992 (plaintiff failed to show that defendant was motivated by discriminatory animus, rather than solely by its belief that Plaintiff violated company policy). Accordingly, summary judgment shall be granted on Plaintiff's unlawful retaliation claim.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [doc. #29] is **GRANTED**.

An appropriate order of judgment will accompany this Order.

Dated this 12th day of February, 2007.

E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE

PDF created with FinePrint pdfFactory trial version www.pdffactory.com